Commonwealth<br>*v.*<br>Buzzell.

---

## BENJAMIN MELVIN *versus* THE PROPRIETORS OF LOCKS AND CANALS ON MERRIMACK RIVER.

By marriage the husband and wife become jointly seised of her real estate in fee in her right, and must so state their title in pleading. If a stranger enters and ousts them, it is a disseisin of both, and a right of entry immediately accrues to both or either of them.

Where a right of entry accrues to a feme covert, an entry by her will be lawful, provided her husband does not expressly disagree to it ; for in the absence of proof to the contrary, his consent will be presumed, the entry being for his advantage.

A right of entry accruing to a feme covert will be barred by *St.* 1786, *c.* 13, unless an entry be made within thirty years after such right accrued to her, although she may not have ceased to be under coverture.

WRIT of entry, dated May 10, 1833, for one undivided fourteenth part of a tract of land in Lowell. The demandant counted upon his own seisin within thirty years.

The defendants pleaded the general issue.

At the trial, before *Putnam* J., it appeared, that Thomas

Melvin
*v.*
Proprietors
of Locks and
Canals on
Merrimack
River.

Fletcher, who died seised of the demanded premises on August 6, 1771, by his will, devised all his real estate to his two daughters, Rebecca and Joanna, with cross remainders, reserving the use of one third part thereof for his widow, so long as she should remain such. Rebecca, the eldest daughter, on January 9, 1773, married Jacob Kittredge, who died in 1813. Joanna, the youngest daughter, on February 29, 1777, married Benjamin Melvin, who immediately entered into the possession of the land. They had seven children, of whom the demandant was one. Benjamin Melvin, the father, died in April 1830, and his wife died in September 1826. The demandant entered upon the demanded premises on July 12, 1832, claiming as heir to his mother.

The tenants produced an office copy of a deed from Jacob Kittredge and his wife to Benjamin Melvin, the father, dated April 27, 1782, whereby, for the consideration of £300, they conveyed to him an undivided moiety of a farm in Lowell, formerly owned by Thomas Fletcher, which included the demanded premises. They also produced an office copy of a deed of mortgage of the same date, from Melvin, the father, and his wife, to Jacob Kittredge, conveying to him a certain portion of this farm, including, as the tenants contended, the demanded premises, to secure the payment of £300 in five years.

The tenants proved, that in April 1796, Kittredge took possession of the demanded premises and ejected Melvin, the father, and his wife ; and there was no evidence of any occupation of the demanded premises, or of any claim thereto by Melvin, the father, or any of his family, from 1796 until the entry of the demandant in 1832, although they lived in the immediate neighbourhood.

The tenants also proved a title in themselves to the land conveyed in mortgage by Melvin, the father, and his wife, to Kittredge, by virtue of several mesne conveyances from the heirs of Kittredge and others.

The tenants then contended, that even if the demanded premises were not embraced in the deed of mortgage, yet that the entry of Kittredge in 1796 and the ouster of Melvin, the father, and his wife, operated as a disseisin of them, and

that by the uninterrupted possession of the tenants and those under whom they claim, for more than thirty years before the entry of the demandant, his right of entry was barred by *St.* 1786, *c.* 13, § 4, which limits the right of any person under no disability, to make an entry into lands, &c., to twenty years next after his right or title first descended or accrued, with a saving to femes covert, &c. of a right to make such entry at any time within ten years after the expiration of said twenty years aforesaid, and not afterwards.

*Melvin*
*v.*
*Proprietors*
*of Locks and*
*Canals on*
*Merrimack*
*River.*

But the judge instructed the jury, that the wife of Melvin, the father, was not disseised during her coverture, and that the demandant's right of entry would not be barred by an undisturbed possession of the demanded premises by the tenants for more than thirty years, because such possession would not be adverse to the wife during the coverture ; and that the only question for them to consider was, whether the demanded premises were intended by the parties to be conveyed by the deed of mortgage.

The jury found a verdict for the demandant.

If the instructions to the jury were incorrect, a new trial was to be granted.

*J. Mason, Hoar,* and *Robinson,* for the tenants, to the point, that Joanna Melvin, the wife, was disseised in 1796, and that a right of entry accrued to her thereupon, cited *Podger's case,* 9 Coke, 104 ; Runnington on Ejectm. 60 ; Adams on Ejectm. 48, 49, note ; Jackson on Real Actions, 25 ; *Polyblank* v *Hawkins,* 1 Dougl. 329 ; Registrum Brevium, 197 ; Rastell's Entries, 318 ; Co. Litt. 30 *a* ; 2 Inst. 342 ; *Langdon* v. *Potter,* 3 Mass. R. 219 ; Roll's Abr. *Assize, E, O* 13 ; Roll's Abr. *Disseisin, C* 1 ; 2 Preston's Abstr. 398 ; *Ards* v. *Simpson,* 1 Cro. Eliz. 72 ; *Newis* v. *Lark,* Plowd. 403 ; *Osborne* v. *Wickenham,* 2 Saund. 195 ; *Wood* v. *Longuevill,* 2 Saund. 269 ; *Clapp* v. *Bromaghan,* 9 Cowen, 530 ; Fitzh. N. B. 177, 188 ; to the point, that her right of entry, as well as that of her heirs, was barred by lapse of time, *St.* 1786, *c.* 13, § 4 ; *Demarest* v. *Wynkoop,* 3 Johns. Ch. R. 142 ; *Cholmondeley* v. *Clinton,* 2 Jac. & Walk. 1 ; *S. C.* 2 Meriv. 172 ; *Eager* v. *Commonwealth,* 4 Mass. R. 182 ; *Beckford* v. *Wade,* 17 Ves. 87 ; *Higginbotham* v. *Burnet*

*Feb. 26th,*
*1835.*

Melvin
v.
Proprietors
of Locks and
Canals on
Merrimack
River.

5 Johns. Ch. R. 184 ; Jackson on Real Actions, 1 ; 4 Dane's Abr. 723 ; Angell on Limitations, 144, 152, 154, Appendix, 65, 67 ; *Stowell v. Zouch*, Plowd. 353 ; *Doe v Jones*, 4 T. R. 300 ; Co. Litt. 114 *b*, 115 *a*.

*Fletcher*, *Mann*, and *Smith*, for the demandant. There could be no disseisin of the wife, and no adverse possession as against her, during the coverture. The husband acquired a life estate in the premises ; and therefore he alone was disseised and had the right of entry. As no right of entry accrued to the wife during the continuance of such life estate, the proviso in *St.* 1786, *c.* 13, § 4, could not affect such right during that time. The wife under such circumstances is viewed in the same light as any other reversioner. *Babb v. Perley*, 1 Greenl. 6 ; 2 Kent's Comm. 110 ; *Tilson v. Thompson*, 10 Pick. 359 ; *Stevens v. Winship*, 1 Pick. 318 ; 1 Preston on Abstr. 266 ; *Jackson v. Schoonmaker*, 4 Johns. R. 402 ; *Jackson v. Johnson*, 5 Cowen, 74 ; *Wallingford v. Hearl*, 15 Mass. R. 472 ; *Wells v. Prince*, 9 Mass. R. 508 ; *Jackson v. Sellick*, 8 Johns. R. 262 ; 2 Stark on Evid. 886, 887 ; Co. Litt. 30 *a*, 246 *a*, 246 *b*, 350 *a*, 351 *a*, 352 *a*, 356 *b* ; Angell on Limit. 140.

The *St.* 1786, *c.* 13, was intended to protect femes covert during the coverture and for ten years after such disability should be removed. The statute is unreasonable, if according to its literal import, the ten years are to begin to run immediately after the expiration of the twenty years, whether the disability be removed or not. It should be construed reasonably, and so as to effect the object for which it was enacted. The statute, although differing in its expressions in some respects, was probably copied from the *St.* 21 *Jac.* 1, *c.* 16, which provides, that femes covert &c. may enter within ten years after the disability of coverture, &c., shall be removed. The *Prov. St.* 9 *Will.* 3, *c.* 8, and *Prov. St.* 6 *Geo.* 1, *c.* 3, contain a similar provision. Now these statutes are *in pari materia*, and intended to remedy the same mischief as the *St.* 1786, *c.* 13, and they therefore, serve to explain and control its literal meaning. Bac. Abr. *Statute, I* 3 ; *Ailesbury v. Pattison*, 1 Doug. 30 ; *Fisher v. Blight*, 2 Cranch, 395 ; *Moore's case*, Ld. Raym. 1028 ; *Stowell v. Zouch*,

Plowd. 366 ; *Jackson* v. *Collins*, 3 Cowen, 89 ; Stearns on Real Actions, 67, 326 ; *Sheffield* v. *Lovering*, 12 Mass. R 490 ; *Clark* v. *Vaughan*, 3 Connect. R. 191 ; *Hall* v. *Vandegrift*, 3 Binn. 374.

The opinion of the Court was afterwards delivered by

WILDE J. In order to determine the general question, whether, upon the facts. in the case, the demandant had any right of entry in 1832, I shall first consider whether Melvin and wife were disseised by the entry of Kittredge and their expulsion in 1796. That they were seised in fee in right of the wife, before and at the time of the entry by Kittredge, cannot, we think, be controverted. In all real actions, brought by husk ind and wife to recover the wife's land, their estate is always so stated ; and is so stated because such is the legal nature of their estate. By marriage the husband and wife are regarded in law as one person, the legal existence of the wife being incorporated and consolidated into that of the husband ; and he has the absolute authority to act for her, but not to bind her in all cases. He may dispose of her chattels, real and personal, but cannot alienate her real estate without her consent. The husband acquires by the marriage a freehold estate, but not the fee, which still remains in the wife. But both together have the whole estate, and therefore in law they are both considered as seised in fee, and must so state their title in pleading. The husband cannot aver, in pleading, that he alone is seised in fee in right of his wife, because the fee is in the wife, and of this he is seised jointly with her.

This is the established form of pleading such a title, and it has been truly and very frequently remarked, that the forms of pleading generally may be relied on as the most accurate test of legal principles. It is laid down by Comyns, (Dig. *Baron & Feme*, 2 *D*,) " that if baron and feme are seised, they ought to plead, that they are both seised *in jure uxoris*, and not that the husband is seised ;" and so say all the authorities. In the case of *Catlin* v. *Milner*, 2 Lutw. 1422, which was trespass *quare clausum* against husband and wife, the plea was that the husband was seised in his demesne as of fee, in right of his wife, that he thereupon demised the premises to the plaintiff, and that he entered to make distress for rent in

Melvin
*v.*
Proprietors
of Locks and
Canals on
Merrimack
River.

Melvin
v.
Proprietors
of Locks and
Canals on
Merrimack
River.

arrear ; on demurrer, this plea was held to be bad, because they were *both* seised in right of the wife. The same decision was made in the case of *Polyblank* v. *Hawkins*, 1 Dougl. 329. In that case, which was an action of covenant against the assignee of a lease, by the husband of the heir at law of the original lessor, the plaintiff in the declaration averred, that the reversion descended and came to his wife, whereupon the plaintiff became seised of said reversion in his demesne as of freehold, in right of his wife. The defendant demurred, because in the declaration the plaintiff's title was not correctly stated ; for that instead of the averment, that the plaintiff was seised of the reversion in his demesne as of freehold, he ought to have averred that he and *his wife* were seised in their demesne as of fee. The plaintiff's counsel in that case admitted that the usual form of declaring was in the manner contended for by the defendant's counsel, and that the case of *Catlin* v. *Milner* was rightly decided ; but they attempted to make a distinction between cases where it was necessary to set out the whole of the estate, and those in which a part only would be sufficient to maintain the action ; but the court held, that the declaration was bad in point of form, because the *exact* title was not set out.

These cases seem decisive, not only as to the form of pleading, of which there can be no question, but they decide that the form of pleading is in conformity with the exact title which the husband and wife have in the wife's lands, while they remain seised. It seems unnecessary to refer to any further authorities on this point ; for I apprehend that it is quite clear, that the husband cannot be seised in fee of his wife's lands, unless she also is seised ; that he acquires no seisin in fee by the marriage ; for he, at most, acquires only a freehold estate, and unless the wife continues seised, the fee would be in abeyance. The husband has a life estate, and the wife has an estate in fee, and by consolidating the two estates, both, in legal contemplation, are considered as seised of the whole estate.

The next question to be considered is, whether Melvin the elder and his wife were disseised by the entry of Kittredge in 1796. And we think it very clear, that they were. They

were actually ousted and divested of their seisin and posses- <span>Melvin</span>
sion, and the seisin and possession of Kittredge was substi- <span>*v.*</span>
tuted therefor ; and this unquestionably amounted to a dis- <span>Proprietors<br>of Locks and<br>Canals on</span>
seisin of both, as both at the time of the entry were seised. <span>Merrimack</span>
Co. Lit. 153 ; *Clapp* v. *Bromaghan*, 9 Cowen, 552. <span>River</span>

We think it equally clear, that a right of entry immediately
thereupon accrued to both the husband and wife. It has been
argued, that the husband alone had the right of entry, that he
had a life estate in the premises, and that no right of entry
accrued to the wife until his death. It is true that if Kit-
tredge had held under the husband, the wife would have had
no right to enter, nor could she enter against the will of the
husband ; but with his consent, express or implied, or in his
absence, she had an unquestionable right to enter. Her right
of entry as against Kittredge was perfect, although in the
exercise of her right she was subjected to the control of her
husband. There is no doubt, that he had a right to create a
particular estate, and so he might discontinue his wife's estate
by feoffment, and by the common law she would have no
right to enter on the feoffee, even after her husband's death,
but was driven to her action *cui in vita ;* but in the present
case Melvin and his wife were jointly seised and disseised ;
and either of them or both might enter on the disseisor.
That she was *sub potestate viri* does not prevent the right of
entry from accruing to her ; otherwise no right of entry could
descend or accrue to a feme covert, and the saving clauses in
the several statutes of limitation, in favor of femes covert,
would be useless and senseless. A feme covert is capable of
purchasing, but the husband may disagree, which will avoid
the purchase ; but if he neither agrees, nor disagrees, the
purchase is good. Co. Lit. 3 *a.* And in like manner, a
right of entry may descend or accrue to her, and her entry
will be lawful, provided the husband does not expressly disa-
gree, for his consent is presumed, it being for his advantage.
We are therefore of opinion, that the right to enter on the
demanded premises accrued to the demandant's mother imme-
diately after the entry and ouster by Kittredge.

We then come to the general question, whether the de-
mandant had a right of entry at the time he entered, or

Melvin
v.
Proprietors
of Locks and
Canals on
Merrimack
River

whether it was not tolled by the tortious entry of Kittredge and lapse of time. This question depends on the *St.* 1786, c. 13, taken in connexion with the principles already considered. By § 4, it is enacted that no person, unless by judgment of law, shall make any entry into any lands, tenements, or hereditaments, but within twenty years next after his r'ght or title first descended or accrued to the same, provided that when any person that is or shall be entitled to make any entry, shall, at the time the said right or title first descended, accrued, or fell, be *within the age of twenty-one years, feme covert,* non compos, imprisoned, or beyond seas, or without the limits of the United States, that then such person shall and may make such entry at any time within ten years after the expiration of the said twenty years aforesaid, and not afterwards. We think the language of this statute extremely clear, and that the intention of the legislature cannot. be doubted. It is equivalent to an express provision, that no person under any of the disabilities named in the statute should be allowed to make any entry upon lands, unless the entry should be made within thirty years next after his title descended or accrued to him. This to my mind seems as clear as that twenty and ten make thirty. The rules of construction, therefore, which may be very important and useful, when the true meaning of a statute may be doubtful, can have no application to the provision in question, the language of which is so plain and unambiguous. It has been argued that other statutes *in pari materia* would explain and control the literal meaning of this; but we think the construction contended for by the demandant's counsel derives no aid by any reference to former statutes; for the language of this statute and the previous statutes on the same subject, are essentially different; and to suppose that the legislature would essentially vary the language of a former statute, so as to convey a different meaning, without intending to make any alteration in the law, would be an imputation on the understanding of the Legislature, which cannot be admitted.

It has been said that the statute, according to its literal meaning, is unreasonable, and that it should have a reasonable construction. But we do not perceive that the statute is un-

reasonable according to its literal import; especially as it bars the right of entry only, leaving the party other remedies to recover his estate. In the present case, the demandant would not be barred, if he had declared in another form, and not on his own seisin; and his remedy would have been equally simple and effectual as in the present form of action. But if the limitation in the statute were as unreasonable as the plaintiff's counsel suppose it to be, we must be governed by it, the meaning being clear, and are not at liberty to speculate on its supposed impolicy.

Upon the whole, therefore, we are of opinion, that the demandant never had any right of entry into the demanded premises, that his actual entry on the tenants was tortious, and consequently that he acquired no seisin thereby. The right of entry accrued to the demandant's mother in April 1796, and she died in September 1826, (more than thirty years,) without making any entry into the premises, or any claim thereto, the tenants and those under whom they claim remaining in the undisturbed possession of the same for the whole time. Her right of entry, therefore, was barred and did not descend to the demandant. Whether it would have so descended, if the mother had died within the thirty years, is a question which it is unnecessary to decide.

It is clear, however, that if the demandant would have had a right to enter, as heir in such a case, he must have entered within thirty years from the time the right first accrued to his mother.

*New trial granted.*